# John Hancock Ice Company *v.* Perkiomen Railroad Company, Appellant.

*Negligence—Railroads—Sparks — Fires — Defective appliances—Circumstantial evidence.*

In an action for damages for property destroyed by a fire alleged to have been caused by the negligent operation of a locomotive, the case is for the jury and a verdict for the plaintiff will be sustained where the evidence clearly shows that the property was destroyed by a live spark emitted by an ascertained engine of the defendant, that the engine in question had thrown sparks shortly after the fire as big as shellbarks, which caused fires in grass and fences, and there is some evidence by experts and practical locomotive engineers as to the inefficiency of the spark arrester on the engine.

Argued Jan. 30, 1911. Appeal, No. 151, Jan. T., 1910,

by defendant, from judgment of C. P. Montgomery Co.,
March T., 1908, No. 6, on verdict for plaintiff in case of
John Hancock Ice Co. v. Perkiomen Railroad Co. Be-
fore, BROWN, MESTREZAT, ELKIN, STEWART and MOSCH-
ZISKER, JJ. Affirmed.

Trespass for damages to property by fire.

Verdict and judgment for plaintiff for $28,080.25.

The facts appear in the report of the same case in 224
Pa. 74, and in the opinion of SWARTZ, P. J., refusing new
trial and judgment n. o. v., as follows:

This action was brought to recover damages for the de-
struction of the plaintiff's ice house and its contents. The
plaintiff company contended that engine No. 846 threw a
spark or sparks on the roof of the ice house, that the fire
which destroyed the building and the ice stored therein,
was caused through the negligence of the defendant rail-
road company.

That the property was destroyed by a live spark emitted
from engine 846 was clearly established. While it was not
formally admitted by the defendant, there was no denial of
the allegations. In fact, if counsel for the defendant com-
pany had disputed the origin of the fire, so clearly shown,
he would have injured his defense before the jury on the
other branches of the case. No. 846 stood on the siding
running along the ice house. It pulled out five loaded cars,
on a curve and on an up grade. The engine labored and
there was a heavy exhaust. The smoke was emitted in
large volumes, and the wind carried it right over the roof
of the ice house. There was no stove or fire in the building
and no fire in the neighborhood of the ice house. The fire
started on the roof of No. 9 compartment of the building,
that is at a point almost immediately above the smoke-
stack when the engine started to pull out the loaded cars.

The building was thirty-five feet high, and the siding
was six or seven feet above the floor of the ice house.

The roof was nearly flat, for the first twelve feet, and
covered with tar paper and gravel. Beyond this point

the shingle roof began and had a much steeper pitch.   The fire started on the shingle roof just beyond the junction of the gravel roof and the shingle roof.   The fire was discovered about fifteen minutes after the engine pulled from the siding and when the men ran up to put it out, it had eaten a hole through the shingle roof.

At the trial the real issue resolved itself into the single inquiry, was the spark thrown upon the roof through the negligence of the defendant company?

At a former trial, reported in John Hancock Ice Co. v. Perkiomen R. R. Co., 224 Pa. 74, we held there was not sufficient evidence for submission to the jury that the spark arrester was not of a proper style, form or pattern. In so ruling we were in error.   At that trial there was no evidence by any witness making a direct attack upon the style, form or pattern of the spark arrester used in engine 846.   There was evidence which showed the bad conduct of this engine for fire throwing.   In other words there was negligence shown by the plaintiff company, and the burden was cast upon the defendant company not only to satisfy the jury that the spark arrester was in good repair, and that the engine was operated with due care, but also that the spark arrester in use was of a proper design or pattern.

Upon the second trial there was some evidence by experts and practical locomotive engineers who attacked the efficiency of the vertical screen in engine 846.   The criticism was not very serious, in our opinion, but the jury may have taken a more favorable view of this testimony.

The plaintiff also found a new witness for the second trial in Grover Carl.   This man knew 846 and had worked on the engine.   He says that shortly after the fire at the ice house, he noticed the engine, near Hosensack, throw sparks as big as a shellbark, and that they set the grass and fence on fire.   All the other witnesses of the first trial repeated their evidence of fire throwing at the second trial.

Counsel for the defendant, at the argument for a new trial, contended very earnestly that the evidence of negli-

gence was so meager and doubtful that the plaintiff should not be permitted to recover.

We do not see how this case could have been taken from the jury; especially so, in the light of the declarations by the Supreme Court when this question was under review, in John Hancock Ice Co. v. Perkiomen R. R. Co., 224 Pa. 74. The railroad company contended there was no negligence or that it was so meager that it did not raise a presumption of negligence. The court then said, "The evidence was sufficient to send the case to the jury on the question of whether the fire from the engine had been communicated to the house, and the court properly held that it was also sufficient for submission to the jury on the question of the defendant's negligence." Again, "When the learned judge ruled the question, the plaintiff had shown, not by a presumption of law arising from the fact that the building had been fired by sparks from the engine, but by affirmative evidence, that through the negligence of the defendant sparks had been emitted which set fire to the plaintiff's building and caused its destruction."

The additional witness on fire throwing and the new evidence which attacked the efficiency of the style, form and pattern of the spark arrester, certainly strengthened the presumption of negligence, on the second trial.

It is claimed that the late case of American Ice Co. v. Penna. R. R. Co., 224 Pa. 439, rules that our case should not have been submitted to the jury. There is a marked difference at the very threshold of these cases. In the American Ice Company, "there was no direct evidence to show that the railroad company caused the fire." "No locomotive was identified as being near the building when the fire started. Indeed there was no testimony to show how or exactly where the fire started or from what cause it originated." In our case the conclusion was inevitable that engine 846 caused the fire. It was shown where and how the fire started. The locomotive stood beside the building, and when it moved out, the smoke, and exhaust, the curve, the grade and the puffs, indicated that the en-

gine labored. At such time it throws fire, if at any time. The fire almost immediately followed, as the engine moved by the building. No other possible explanation of the fire could be given. "It was not all a guess or conjecture," as in American Ice Co. v. Penna. R. R. Co., 224 Pa. 439. In that case the jury was asked to find that the fire was caused by the railroad company because of negligent fire throwing before and after the fire. In our case it was shown that the fire was caused by engine 846, and this fact was established clearly, before any evidence was given of negligent fire throwing. The concluding sentence of the opinion in American Ice Co. v. Penna. R. R. Co., 224 Pa. 439, points out the distinction between that case and the one now under consideration: "There can be no recovery in this case, because appellant failed to prove what caused the fire or that the railroad company had anything to do with starting it."

In the case before us the fire occurred at noon time. The air may be full of live sparks at midday and yet the eye cannot detect them. If the defendant's contention is sound, then there can be no recovery in any case unless sparks are seen to fall on or about the building, immediately before the fire, although there is absolute certainty that a particular engine caused the fire and abundant proof of negligent fire throwing both before and after the fire, by the particular engine in question. If it is necessary to show sparks of unusual size at the building at the time of the fire, then we fail to see any necessity for proof of negligent fire throwing, before and after the fire. The negligence of the company is established by throwing the unusual sized sparks at the time of the fire, without showing the negligent habit of fire throwing.

American Ice Co. v. Penna. R. R. Co., 224 Pa. 439, is also distinguishable from the fact that the cause of the fire was not charged against any particular engine.

We think the cases in Pennsylvania show, that the cause is for the jury where the evidence is conclusive that the fire was caused by the railroad company, although there is no

direct proof of fire throwing at or immediately before the fire, if there is proof that the particular engine or engines which caused the fire threw sparks of unusual size, within a short time before and after the fire. In Erie Ry. Co. v. Decker, 78 Pa. 293, there was proof that engine 458 caused the fire. There was no evidence of negligent fire throwing just before the fire. The plaintiff was not allowed to recover because he could not show any negligent conduct of engine 458, before and after the fire, although he showed negligent fire throwing by some engines, but did not identify any one of them as 458. In Penna. R. R. Co. v. Stranahan, 79 Pa. 405, the evidence was conclusive that the fire was caused by the engines of the railroad company. There was no proof of fire throwing at the time of the fire. The barn was destroyed in the afternoon. The plaintiff recovered, by showing the negligent action of the engines of the company about the time of the fire but at points removed some miles from the place of the fire. In Jennings v. Penna. R. R. Co., 93 Pa. 337, the fire was caused by a particular engine. There was no evidence of negligent fire throwing at the time of the fire. The plaintiff was defeated in his action because the evidence as to the bad conduct of engines before and after the fire did not relate to the special engine which caused the fire. In Phila. & Reading R. R. Co. v. Schultz, 93 Pa. 341, the plaintiff's woodland and rails were destroyed by fire caused by the 10:30 passenger train. There was no evidence of fire throwing at the time of the fire, except the existence of fires along the railroad. The plaintiff recovered by showing the bad fire throwing of the particular engine for a period of two weeks before the fire. In Gowen v. Glaser, 3 Cent. Repr. 109, the plaintiff's rags were spread out in a field and destroyed by fire from some engine of the railroad company. The only evidence of negligence offered was the proof that the engines of the company repeatedly threw out sparks of excessive size. A verdict for the plaintiff was sustained.

The distinguished jurist who prepared the opinion in

Henderson v. Railroad Co., 144 Pa. 461, in his usual clear and comprehensive decision, covered all the various questions that ordinarily arise in these railroad fire cases. His careful review of the law and its application to the Henderson case leaves no room for doubt upon the proposition we have endeavored to consider. "Where the injury complained of is shown to have been caused, or, in the nature of the case could only have been caused by sparks from an engine which is known and identified, the evidence should be confined to the condition of that engine, its management and its practical operation." "Of course, the inquiry in all such cases is as to the existence or condition of the spark arrester at the precise time of the injury; but in order to make this practicable, by proof that it was defective, or threw out sparks of unusual size, a reasonable latitude must be allowed to show its management and operation both before and after." In the Henderson case a watchman stood by the mill as the engines passed. He did not notice any sparks thrown. The evidence of negligence covered only other times and places when the engines threw sparks or coals of unusual size. The case was reversed and a new trial allowed because the time was not limited by the court during which these other fire throwings occurred. The proof that the Henerdson mill was destroyed by the fire from an engine was not so conclusive as the proof in our case.

We conclude that the plaintiff, under the testimony in the case before us, was entitled to go to the jury.

If this was a proper case for submission to the jury, the question still arises—is the verdict so clearly against the evidence that it should not be allowed to stand?

We think the evidence was sufficient to sustain the verdict. The case was tried with great care and ability, by counsel on each side. This being a second trial, each party knew what the other would offer before the jury. There were no surprises of any moment. The defendant company had the advantage in preparing to meet the evidence submitted at the former trial. It had its records of the

movements of 846 and was prepared to test the credibility
of the evidence given as to fire throwing. Another jury
might reach a different conclusion from the same testi-
mony, but this is true in most cases where the charge.is
negligence in fire throwing by an engine. There are few
cases where the proof of negligence consists of direct or
positive evidence of eyewitnesses who saw the spark fall
that destroyed the building. The very nature of the case
ordinarily admits of nothing more than circumstantial
evidence to establish the negligence. As was said in Hen-
derson v. Railroad Co., 144 Pa. 461, 480 "on account of
the great difficulty in proving negligence in such cases,
any proper evidence from which negligence may be in-
ferred is sufficient to throw the burden on the defendant."
"It is not required that the fact of negligence be estab-
lished by direct or positive proof; like any other fact, it
may be established by circumstantial evidence."

It is true the evidence of the witnesses who testified to
the negligent fire throwing was contradicted by the records
produced by the defendant company. The train, however,
was known as the pick up and 846 was the engine or-
dinarily in use. The witnesses, or some of them, identified
the engine by its number. Where a witness testifies to fire
throwing of an identified engine, he may make a mistake
as to the particular night he saw the engine, but unless he
is corrupt, it is difficult to believe that he made a mistake
as to what he swears he actually saw. The important in-
quiry is—did he see sparks or live coals within a very short
time of the fire, as big as a shellbark, or as big as the end
of your thumb?

If the jury believed these witnesses who testified to the
negligent fire throwing, then engine 846 did not have a
proper spark arrester in good condition, or the engine was
negligently operated. If it was bad a few days before the
fire, and a few days thereafter, the jury could fairly infer
it was bad at the time of the fire. There was no evidence
of any change or repair of the spark arrester, about the
time of the fire. Even if a verdict for the defendant would,

perhaps, be more in accord with our view of the evidence, we see no good reason for disturbing the trial when we are satisfied that the evidence of the plaintiff, if believed by the jury, fully justified their verdict. In the conflict of evidence, it was the province of the jury to determine whom they would believe. We have no desire to usurp the functions of a jury.

We think our answer to the plaintiff's third point was not misleading to the jury. There was an expression in Mr. Fenstermacher's testimony which may mean that holes of an inch or three-quarters of an inch were not patched in the screen or netting. We left the matter to the jury to determine what meaning should be given to his evidence. We were careful to say that the jury must consider his whole testimony to determine his meaning. We did not affirm this point, except to say that a witness must not be judged by one sentence or one expression in his testimony, the jury are to determine his meaning and this must be done upon a consideration of his whole evidence. We do not see how the defendant was hurt, in any manner, by this instruction. The witness Fenstermacher was called back to make clear his reports and his notes on the reports as to repairs and other matters. The questions were simple and he must have understood them. He testified that he made repairs to the screen but if the holes were as big as six inches then the screen was sent to the boiler shop. It follows that holes under six inches were within his care. The question was then asked "How big would the holes have to be before you would begin to notice them to repair them? A. If they would be only an inch or three-quarters of an inch I would repair them." This answer was unsatisfactory. It was not clear. Inasmuch as he repaired all holes under six inches, his answer might well mean that holes less than three-quarters of an inch or an inch would be passed without repair. The next question and answer made such a meaning still clearer. "If they get as big as an inch, then you would repair them? A. Yes, sir." His whole evidence may well

show that this meaning was not intended. It was, therefore, that we directed the jurors' attention to his whole testimony.

We can see no good cause of complaint in our answer to the plaintiff's third point. Surely, proof that the spark arrester was of a proper mesh was not sufficient to overcome the plaintiff's evidence of negligence. This evidence of negligence attacked the pattern of the spark arrester, its repair and the operation of the engine, John Hancock Ice Co. v. Perkiomen R. R. Co., 224 Pa. 74. The answer gave no intimation that a screen with two and one-half meshes to the inch might be an improper screen, and the jury could draw no such inference from our answer. There was no attack upon the netting by any witness or by counsel. We said to the jury: "As I understand the witnesses, they all agree that a screen two and one-half meshes to the inch is a standard mesh and is recognized in general use as the proper mesh for the use in spark arresters."

The sixth and eighth points were refused. They asked for binding instructions in favor of the defendant. These reasons for a new trial we have already considered.

The seventh point was refused. We were asked to say that the plaintiff could not recover for the loss of the ice stored in the building that was burned down. The statement claims damages for the loss of the "ice house and the contents of said ice house."

The building was filled with natural ice. One of the compartments was empty, because the cars of the defendant company had taken away the ice as a railroad carrier of freight. On the day of the fire the defendant company was attempting to remove more of this ice. That the contents of this building consisted of ice was a fact known to the defendant company. The fire occurred on March 30, 1907. That the winter storage of ice still remained was also pretty evident. The "contents" of an ice house would naturally consist of ice, if it had any contents at all.

The defendant cannot say it was unprepared to meet this claim.  At a former trial the contents of the ice house were shown as well as the value of the same per ton in the building.  We think the plaintiff was entitled to recover for the ice destroyed.  The statement filed in the case covered the ice under the claim for "the contents of said ice house."

The defendant filed his plea and went to trial without asking for a bill of particulars or a more specific statement.  The test is, did the statement inform the defendant of the nature of the demand so that he was not misled in the preparation of his defense.

The remaining reason for a new trial relates to the question put to the witness, William F. Kiesel.  The defendant attempted to give all the circumstances in evidence relating to the fire, and then asked the witness whether the fire could have been caused by a spark from the locomotive stack with a most approved spark arrester and in perfect condition.

In the first place the conditions attending the fire were not fully given.  In the second place the answer would not help the jury.  Again and again the jury was told that no spark arrester had as yet been discovered which would prevent the throwing of sparks or that would prevent fires.  We said "that the defendant's locomotive communicated fire to the plaintiff's premises raises no presumption of negligence."  Therefore, that the fire could have been caused without negligence was not the issue.  This was not a matter for an expert opinion.  If the witness had given us his experience as to the size and distance sparks may be thrown by an engine properly operated and properly equipped with an efficient spark arrester, the jury would have had all the information the witness was entitled to give upon that branch of his evidence.  This we allowed him to do, but when counsel learned that the witness had no practical experience upon the subject whatever, he did not even press the questions which we allowed.  Without some experience upon the subject, the

opinion of the witness would be no more than a guess. To give us what he read in the books would be mere hearsay.

To allow the witness to give an opinion upon the evidence in the case, even if fully stated to him, would mislead the jury. They would consider it as an opinion that the fire, under the circumstances, was caused without any negligence. This was, in effect, the purpose of the question. That fires, along the railroad, occur constantly without negligence, can not be disputed. No opinion evidence is needed to establish this proposition. Where there is an approved spark arrester in use the company "cannot be made liable though it fire every rod of the country through which it runs:" Phila. & Reading R. R. Co. v. Schultz, 93 Pa. 341.

If the witness had answered the question which we allowed the jury could then have formed an opinion upon all the facts and circumstances just as well as the witness.

It is always dangerous to cast into the jury box the opinion of witnesses when they can give facts that will enlighten the jurors so they may form their own opinion. Courts, more and more, reject opinion evidence: Reese v. Clark, 198 Pa. 312. Especially is this so where the opinion of the witness is not founded upon experience, but is based upon theory alone: Lineoski v. Susquehanna Coal Co., 157 Pa. 153, 172. Counsel for defendant realized this difficulty and when the witness said he could only answer from his study and not from any practical knowledge or experience the questions that we allowed were not pressed. No exception was taken to our ruling at the time. Some time later, on the next day, counsel asked for an exception. We said we would grant it. We made no examination of the record at the time, but in giving the exception, we certainly did not mean to grant an exception to a ruling that was never made. We refused the original question except as modified in our ruling, and to that ruling we now note an exception for the defendant.

Upon the question whether the witness was competent or not to give his opinion as to the distance a live spark

may communicate fire, in a high wind, we were not asked to make a ruling. What our ruling would have been, at the time, had it been necessary to make it, we are unable to say at this time. We always grant exceptions regardless of technicalities, but in fairness to all parties we cannot allow an exception where no ruling was made.

And now, April 4, 1910, the reasons for a new trial are dismissed and a new trial is refused. The motion for judgment non obstante veredicto is also dismissed. It is ordered that judgment be entered for the plaintiff and against the defendant upon the verdict of the jury.

*Error assigned* was in refusing to enter judgment n. o. v.

*Montgomery Evans*, with him *John M. Dettra*, for appellant.

*Nicholas H. Larzelere*, with him *Robert D. Maxwell, Harold B. Beitler*, and *Franklin L. Wright*, for appellee.

Per Curiam, March 20, 1911:

The judgment below is affirmed on the opinion of the court refusing a new trial and judgment for the defendant non obstante veredicto.